# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                     No. CR 04-1466 JB

GREAT WALL BUFFET, INC.
and FENG CHEN,

      Defendants.

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                     No. CR 04-1467 JB

GRAND CHINA, INC., JING QUIAN
JIANG, a/k/a RICKY, MING YUE
CHEN and LINDA ALI,

      Defendants.

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                     No. CR 04-1468 JB

CHINA STAR, INC., d/b/a CHINA WOK;
JING SONG JIANG, a/k/a JIMMY and
WAN HUI LU,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' (i) Motion for Trial Setting,

filed November 1, 2004 (Doc. 33) in CR 04-2466 JB; (ii) Motion for Trial Setting, filed November

1, 2004 (Doc. 80) in CR 04-2467 JB; and (iii) Motion for Trial Setting, filed November1, 2004 (Doc. 53) in CR 04-2468 JB. The primary issue is whether the Court should set trials for these three matters on the Court's next trial docket. Because the three cases are already on the Court's trailing docket set to begin on Monday, December 13, 2004, and because no one has moved to continue those trials, the Court will dismiss the motion as moot.

## PROCEDURAL BACKGROUND

A grand jury indicted the Defendants on July 27, 2004. Defendant Great Wall Buffet, Inc. was presented before the Honorable Robert H. Scott, United States Magistrate Judge, on August 13, 2004, and Defendant Feng Chen was presented before the Honorable W.D. Schneider, United States Magistrate Judge, on July 29, 2004. Defendant Grand China was presented to Judge Scott on August 13, 2004, and Defendants Jiang Quian Jiang, a/k/a "Ricky," Ming Yue Chen, and Linda Ali were presented before Judge Schneider on July 29, 2004. Defendant China Star, Inc. was presented to Judge Scott on August 13, 2004, and Defendants Jing Song Jiang a/k/a Jimmy and Wan Hui Lu were presented before Judge Schneider on July 29, 2004. Judge Scott filed a *sua sponte* Order concerning discovery on August 3, 2004.

By the end of August 2004, the United States completed its production of evidence upon which it relied to support each count of the indictments. On August 13, 2004, and several times thereafter, the United States invited all Defendants to view all remaining evidence seized pursuant to search warrants or obtained via grand jury subpoenas. Ms. Tara Neda's letter of August 13, 2004, did not inform defense counsel that these materials were in her office and that the United States was keeping them separately from the materials held at the Immigration and Customs Enforcement ("I.C.E.") office. At the time the United States filed its motions in early November 2004, no

defendant had scheduled an appointment to view any of the grand jury material stored at the United States Attorney's Office.  Once counsel reviewed the United States' motion and learned of the existence of these materials at the United States Attorney's Office, defense counsel did review these materials and designated portions for copying.  The Defendants represented that, had Ms. Neda consulted with defense counsel for their position in advance of filing her motion for trial setting, defense counsel would have gladly gone earlier to review the Grand Jury subpoena material.

On one occasion, September 22, 2004, several defense attorneys visited the I.C.E. office to view evidence – commonly referred to as "the 49 boxes" – seized during the execution of the April 6, 2004 search warrants.  No attorney reviewed these materials beyond three hours.

In its communications with defense counsel, the United States requested that all defense counsel coordinate any evidence review rather than to appear one at a time to review materials in the United States' possession.  All defense counsel have attempted to honor this request in a way that will not cause undue delay.  The defense counsel have been conscientious about coordinating review of discovery, as the United States requested, to avoid the need for the United States to deal with each attorney separately, but represent that this task is difficult in light of counsels' busy schedules and is compounded by the fact that many of the Defendants do not speak English, and that some of them are still in custody and therefore not readily available for consultation.

On October 13, 2004, the Court held a status conference.  At that time, the United States offered to make all documents available for copying, but declined to pay for copying of discovery. Because the Defendants presented no authority for shifting the costs to the United States, the Court was unwilling to order the United States to pay for copies at that time.  The Court ordered that the defense would have to arrange and pay for the copying.  The Court did indicate, however, that it

would be glad to review any authority that allowed it to shift the costs to the United States, but to date, the Defendants have not provided the Court with any such authority.

During the status conference, all but one of the Defendants asked the Court not to designate these cases as complex within the meaning of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174.  At that last scheduled status conference, the Court also scheduled a December 2, 2004 status conference to address deadlines and scheduling for motions and a trial setting. The Court scheduled the December 2, 2004 status conference after considerable input from the United States and from all the Defendants, and after expressing its own thoughts regarding some tentative deadlines and hearing dates over the next several months and in light of the considerable amount of discovery and difficulties that are inherent in multi-defendant cases.

The Defendants' funds are limited.  The Defendants represent that they have been attempting to resolve the copying cost issue.  On October 15, 2004, however, the United States wrote to all defense attorneys to begin the copying process, but received no response.  On October 25, 2004, the United States wrote a second letter, again requesting the name of the copying company.  To date, the Defendants has made no such arrangements.

The United States has approximately 15 material witnesses – former employees of all three restaurants that were unlawfully in this country.  Some of the witnesses remain in a half-way house awaiting the resolution of these cases.  Others have found residences that the Pretrial Services approved; however, these material witnesses require monitoring.  Some of the material witnesses have been released to family members and are no longer at the halfway house.

Furthermore, two of the Defendants are detained pending trial.  At their detention hearings, the defense pointed to the cases' complexity and length of time necessary for trial preparation to

support the release of these two Defendants.

The Defendants in all related cases have filed a joint response to the United States' motion for trial setting.

## ANALYSIS

The Court will summarily deny the United States' motion.  The United States did not consult with the Defendants before filing its motion.  Moreover, the three cases are already on the Court's trailing docket for Monday, December 13, 2004; the motion is thus moot.

## I.    THE UNITED STATES DID NOT CONSULT WITH OPPOSING COUNSEL BEFORE FILING ITS MOTION.

The local criminal rules require that the movant contact opposing counsel before filing a motion. See Local Criminal Rule 16.3 (indicating Local Civil Rules 7.1-7.10 apply to motions filed in criminal cases.)  The movant must cite the results of that consultation in its motion.  The motion's silence would suggest that the United States did not consult with defense counsel before filing its motion.

Good, productive things often happen when counsel talk meaningfully and civilly before approaching the Court for resolution of disputes.  The Court expects counsel to discuss matters before filing motions, especially in cases that involve the coordination of multiple defendants and multiple counsel.

The Court will summarily deny the motion without prejudice to the United States.

## II.   THE UNITED STATES' MOTION IS MOOT.

There is no need for a separate hearing in advance of the December 2, 2004 status conference to address a trial setting.  The cases are already on the Court's trailing trial docket for Monday,

December 13, 2004.  The Court is expecting the Defendants to move to continue those trials.  The Court will address  the United States' concern in the context of its position on the Defendants' motions to continue the trials.

The tentative time table the Court contemplated in October was realistic and would allow counsel adequate time to interview witnesses, and to prepare for motions and for trial.  The Court must proceed in a manner that will provide the Defendants' counsel with adequate time to prepare a defense to the Indictment.  At the December 2, 2004 status conference, however, the Defendants must be prepared to commit to trial settings.

Unwarranted litigation delays: (i) cause an unnecessary expenditure of resources in monitoring the witnesses; and (ii) increase the risk that some of these material witnesses may disappear.  On the other hand, the United States must have anticipated this situation before filing the allegations against multiple Defendants in these Indictments.  The United States have filed cases against such multiple Defendants on many prior occasions.

As the Defendants point out, there is a solution to the United States' problems.  Rule 15(a)(2) of the Federal Rules of Criminal Procedure provides for pre-trial depositions of material witnesses, permitting those witnesses to be discharged before trial.  Those witnesses who are still at the halfway house could be deposed either on video or audio tape, and their depositions presented at trial.  If these witnesses are deposed pre-trial, defense counsel would have the opportunity to cross-examine them at their deposition and neither the Defendants nor the United States would suffer prejudice as a result.

The defense counsel represent that it is not their intention to cause unnecessary delay.  But the defense has not exhibited enough interest to date in reviewing the remaining documents.  The

defense has exerted minimal effort to move the case along.  While decisions regarding copying of discovery are dependent upon the finances of each Defendant, the Defendant must make those cost-benefit decisions very soon and get discovery underway.  The Court does not doubt that the Defendants have had to discuss important decisions about allocation of funds, but the Defendants must make strategic decisions now about what is necessary to survive.

The Defendants indicate that, in Ming Yue Chin's case, his decisions regarding copying of discovery is dependent upon the time required to obtain the Tenth Circuit's authorization for expenditure of Court funds.  Counsel may need to advance some costs.  But the Court cannot stop its trial calendar awaiting for each CJA lawyer to be paid costs in advance of work.

The Court resists the Defendants' suggestion that the United States and the Court have created a copying dilemma for the Defendants.  The Court invited the Defendants to submit authority that suggested it could shift costs to the United States.  The Defendants have not submitted any such authority.  Without some support for shifting the costs in a criminal case, the costs must remain where they are – on the party wanting the copies.

While the Court expects the Defendants to move to continue the pending trials, the Court notes that setting the trials on the Court's next trial docket, which begins December 13, 2004, is unrealistic and could cause irreparable harm to the Defendants.  Setting trial on the Court's next docket could deny the Defendants effective assistance of counsel that the Sixth Amendment to the United States Constitution guarantees.  The Court encourages all counsel to meet in advance of the December 2, 2004 status conference and see how close the parties can come to working out a schedule, with precise deadlines, for moving these cases to a prompt, fair resolution.

**IT IS ORDERED** that the United States' Motion for Trial Setting is denied and dismissed

as moot.  These cases currently remain set for trial on the next available trial docket, which is the

Court's trailing docket beginning December 13, 2004.  Upon the Defendants' motion, the Court will

set this case for trial in 2005.  At the status conference, the Court will set a motions deadline and a

hearing on all pending motions.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
   United States Attorney for the
      District of New Mexico
Tara C. Neda
   Assistant United States Attorney for the
      District of New Mexico
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Hope Eckert
Albuquerque, New Mexico

*Attorney for Defendants Great Wall Buffet, Inc.,*
*Grand China, Inc., and China Star, Inc.,*

Eric Walsh Turner
Donald F. Kochersberger, III
Turner & Kochersberger, PC
Albuquerque, New Mexico

*Attorneys for Defendant Feng Chen*

Tova Indritz
Albuquerque, New Mexico

*Attorney for Defendant Jing Qian Jiang*

-8-

Robert R. Cooper
Albuquerque, New Mexico

 *Attorney for Ming Yue Chen*

Gregg Vance Fallick
Albuquerque, New Mexico

 *Attorney for Defendant Linda Ali*

David A. Freedman
Nancy Hollander
Zachary A. Ives
Freedman Boyd Daniels
 Hollander & Goldberg, P.A.

 *Attorneys for Defendant Jing Song Jiang*

William Parnall
Albuquerque, New Mexico

 *Attorney for Defendant Wan Hui Lu*